**Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000599
25-MAY-2018
08:15 AM**

NO. CAAP-16-0000599

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


CAROLYN LAI YOSHIMOTO, as Successor Trustee under that
certain General Revocable Trust Agreement dated
March 27, 1991, made by Lily Tom Lai, Plaintiff-Appellee,
v.
HARRISON Y.H. LAI, Individually and as Successor Trustee
under that certain General Revocable Trust Agreement dated
March 27, 1991, made by Henry S.L. Lai, Defendant-Appellant,
and
KELLIE F.T. LAI, Defendant-Appellee


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 15-1-0264)

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

Defendant-Appellant Harrison Y.H. Lai (**Harrison**), as

Successor Trustee under that Certain General Revocable Trust

Agreement dated March 27, 1991, made by Henry S.L. Lai (**Henry**)

(**the Henry Trust**), appeals from the post-judgment Order Granting

Plaintiff's Motion for Distribution of Net Sale Proceeds

(**Distribution Order**) entered on July 29, 2016, by the Circuit

Court of the First Circuit (**Circuit Court**).[1]

---

[1]     The Honorable Rhonda A. Nishimura presided.

Plaintiff-Appellee Carolyn Lai Yoshimoto (**Carolyn**), as Successor Trustee under that Certain General Revocable Trust Agreement dated March 27, 1991, made by Lily Tom Lai (**Lily**) (the **Lily Trust**), brought a partition action against Harrison, Harrison's wife Kellie F.T. Lai (**Kellie**), and the Henry Trust to partition certain real property located at 44-596 Kaneohe Bay Drive, Kaneohe, Hawai'i (**the Property**). Following the completion of the sale of the Property at auction, Carolyn filed a Motion for Distribution of Net Sale Proceeds (**Distribution Motion**). In the Distribution Order, after allocating various expenses and costs as chargeable against specific parties, and considering the equities of the case, the Circuit Court determined the respective amounts to be received by each of the parties with an interest in the Property.

The Henry Trust appeals the Distribution Order.

I.    BACKGROUND

A.    Creation of Trusts and Financing Secured by Property

Henry and Lily are the parents of Harrison and Carolyn. The Property is a residence purchased by Henry and Lily, never occupied by them, in which Harrison and his family lived from 1983 until they needed to relocate as a result of the partition sale of the Property in 2015.[2] In 1991, Henry and Lily individually created their respective trusts. At that time, the ownership of the Property was transferred to the Henry Trust and the Lily Trust. Lily died in 1997, at which time Henry became

---

[2]     Kellie moved off the Property in 2010 and did not reside there after that time.

the successor trustee for the Lily Trust in addition to serving as trustee for the Henry Trust.

In 1994, Henry, Lily, Harrison, and Kellie procured a loan in the amount of $304,000, secured by a mortgage on the Property. On January 15, 2004, the loan was refinanced in the amount of $310,000, which paid off the first loan, with the excess sum distributed to Harrison and Kellie. A second refinancing of this loan occurred on October 3, 2006. Kellie executed a promissory note for a loan in the amount of $488,000 (2006 Loan) secured by a mortgage on the Property.[3] Concurrent with the 2006 mortgage, Henry, acting as trustee for both the Henry Trust and the Lily Trust, executed a Warranty Deed conveying the Property to Henry, Harrison, and Kellie in their individual capacities. Immediately thereafter, the Property was transferred by Henry, Harrison, and Kellie back to the Henry Trust with an undivided forty-five percent (45%) interest, to the Lily Trust with an undivided fifty percent (50%) interest, and to Harrison and Kellie with undivided five percent (5%) interest as tenants by the entirety.

On December 19, 2011, Henry resigned as trustee of both the Henry Trust and the Lily Trust, after which time Carolyn served as trustee for both trusts. On November 8, 2013, Carolyn

---

[3] Although Kellie was listed as the sole borrower on the promissory note, Harrison admitted that he always understood that he and Henry were also borrowers on the note, and that Henry, Harrison, and Kellie obtained the benefits of that loan.

3

resigned as trustee of the Henry Trust; thereafter, Harrison has served as successor trustee of the Henry Trust.[4]

B.  Default on 2006 Loan, Foreclosure and Partition

The 2006 Loan went into default, and a foreclosure proceeding against the Property was commenced by the mortgage-holder on February 7, 2013.  Carolyn, as a trustee for the Lily Trust, secured a buyer for the Property who was willing to pay $1.1 million, a price close to the Property's assessed value in 2015, which was $1.14 million.  Harrison refused to cooperate with the voluntary sale of the Property.  Therefore, the Lily Trust initiated the partition action from which the Distribution Order arises (the **Partition Action**).

Harrison, individually and as trustee of the Henry Trust, opposed the partition and sought to remove Carolyn from

---

[4]     A Petition for Appointment of Conservator and Guardian was filed by Harrison on August 31, 2016 seeking a determination that Henry is incapacitated and seeking the appointment of a conservator and guardian.  The court ordered that Carolyn was to be appointed as Henry's guardian and conservator. Carolyn argues that the case is now moot as she will hold title to all of the Henry Trust's assets that are payable to or for Henry to be held and used for his benefit.

> [A] case is moot where the question to be determined is abstract and does not rest on existing facts or rights.  Thus, the mootness doctrine is properly invoked where events have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised.

Bank of New York Mellon v. R. Onaga, Inc., 140 Hawai'i 358, 365, 400 P.3d 559, 566 (2017) (quoting Okada Trucking Co. v. Bd. of Water Supply, 99 Hawai'i 191, 195-96, 53 P.3d 799, 803-04 (2002)).  We disagree that the case is now moot. Nothing in the record suggests that the Henry Trust, with Harrison as trustee, will not continue on as a separate legal entity controlled by him.  Although the assets in the trust are to be used for Henry's benefit, Harrison, as trustee, controls the assets of the trust and the current litigation.  In addition, as explained herein, the Henry Trust, as a legal entity, is vulnerable to the claims of Henry's creditors and, as such, which trust is allocated the net proceeds of the sale of the Property is still of practical and legal import.

her position as trustee of the Lily Trust in a separate proceeding in probate court. See In re that Certain General Revocable Trust Agreement Dated March 27, 1991, Made by Lily Tom Lai, T. No. 15-1-0071 (the **Probate Action**). Harrison and the Henry Trust sought to delay the Partition Action while the Probate Action was ongoing. In the Probate Action, Harrison claimed that Carolyn committed various misdeeds while acting as trustee for the Lily Trust. The Probate Action was resolved on December 30, 2015 when the probate court found that there was no factual or legal basis to grant the relief sought by Harrison.

Although Harrison and the Henry Trust sought to delay the Partition Action, the relief was not granted, and the Property was sold at auction for the sale price of $1,210,000, which was confirmed by the Circuit Court over Harrison's objection. The Circuit Court instructed that the net proceeds from the sale of the Property be held in escrow pending further order from the Circuit Court as to the final distribution.

On May 23, 2016, the Lily Trust filed the Distribution Motion. The Lily Trust, as a fifty-percent (50%) owner of the Property, agreed to its interest being charged one-half of the balance due on the 2006 Loan at the inception of the foreclosure, which totaled $253,322.21.[5] The proceeds from the sale of the Property paid all the claims of the mortgagee in the foreclosure action, state and federal tax liens stemming from certain unpaid

---

[5] The balance due on the 2006 Loan at the beginning of the foreclosure was $458,519.18 plus interest, late charges, and advances in the amount of $48,125.21, for a total amount of $506,644.39. One-half of the total amount appears to be $253,322.21.

taxes of Henry, as an individual, property taxes, and the Commissioner's fees. The Distribution Motion sought equitable adjustments to the distribution of the net sale proceeds from the sale of the Property, which equaled $476,120.82 (**Net Proceeds**), to compensate the Lily Trust for amounts paid out of the proceeds of the sale of the Property that it argues should be charged to other parties. On June 30, 2016, a hearing was held by the Circuit Court on the Distribution Motion. The Lily Trust requested, and the Circuit Court ordered, over Harrison and the Henry Trust's objections, that the Net Proceeds be distributed as follows:

(1) $420.00 to the Commissioner;

(2) $463,808.30 to the Lily Trust;

(3) $11,892.52 to Kellie;

(4) $0.00 to the Henry Trust.

In determining that the Henry Trust should receive none of the Net Proceeds, the Circuit Court found that IRS and state tax liens that encumbered the Property due to Henry's unpaid taxes should be charged to the Henry Trust in the amount of $90,651.44.[6] The Circuit Court also found that foreclosure expenses in the amount of $120,187.12 (**Foreclosure Expenses**) were chargeable to the Henry Trust and Harrison.[7] In addition, the Circuit Court found that the Lily Trust was entitled to recover

---

[6] The Lily Trust sought a credit for half of the tax liens paid in resolving the foreclosure on the Property in the amount of $45,325.72.

[7] The Circuit Court accepted the Lily Trust's proposed allocation of ninety-five percent (95%) of foreclosure expenses to the Henry Trust and five percent (5%) to Harrison. This is because Kellie moved off the Property in 2010 and default did not occur until 2011, at which time Henry, Harrison, and Harrison's sons were living on the Property.

$63,242.52 in attorneys' fees and costs from the Henry Trust's portion of the Net Proceeds, representing a ninety percent (90%) allocation to the Henry Trust and ten percent (10%) allocation to Harrison. The total of the above amounts found to be attributable to the Henry Trust exceeded the forty-five percent (45%) share of the Net Proceeds to which the Henry Trust otherwise would have been entitled, resulting in the $0.00 distributed by the Circuit Court to the Henry Trust.[8]

On August 26, 2016, the Henry Trust filed its Notice of Appeal.

II. POINTS OF ERROR

The Henry Trust raises three points of error on appeal, arguing that the Circuit Court erred when it: (1) adopted the Lily Trust's calculations as to the allocation of certain costs and liens in making its equitable division of the Net Proceeds; (2) distributed a share of the Net Proceeds to Kellie when she was the sole borrower on the promissory note and a signor on the mortgage; and (3) denied the Henry Trust the opportunity to discover and present evidence as to which trust was responsible for the liens that encumbered the property, when the taxes should have been paid, and who benefitted from the loans.

---

[8] $476,120.82 [Net Proceeds] x forty-five percent (45%) [Henry Trust's ownership interest in the Property] = $214,254.36 [Henry Trust's Net Proceeds Share]. $45,325.72 [IRS and State Tax Liens] + $120,187.12 [Foreclosure Expenses] + $63,242.52 [Attorneys' Fees and Costs] = $228,755.36 [Equitable Adjustments Chargeable to the Henry Trust]. Accordingly, the Equitable Adjustments Chargeable to the Henry Trust are greater than the Henry Trust's Net Proceeds Share, thereby wiping out the Henry Trust's proceeds from the sale of the Property.

·III. APPLICABLE STANDARDS OF REVIEW

> Since a partition action is an action in equity, we review a partition finding under the abuse of discretion standard. Under the abuse of discretion standard, unless there is abuse, a trial court's discretion should not be disturbed. Abuse is apparent when a trial court's discretion clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant. In exercising its discretion, the court should act in the interest of fairness and prudence, and with a just regard to the rights of all concerned.

Kimura v. Kamalo, 106 Hawai'i 501, 506-07, 107 P.3d 430, 435-36 (2005) (citations and internal quotation marks omitted).

It is well-established that discovery rulings by the courts below are reviewed for an abuse of discretion. Anastasi v. Fidelity Nat. Title Ins. Co., 137 Hawai'i 104, 111, 366 P.3d 160, 167 (2016).

> The Hawai'i Rules of Civil Procedure (HRCP) reflect a basic philosophy that a party to a civil action should be entitled to the disclosure of all relevant information in the possession of another person prior to trial, unless the information is privileged. However, the extent to which discovery is permitted under Rule 26 is subject to considerable latitude and the discretion of the trial court. Thus, the exercise of such discretion will not be disturbed in the absence of a clear abuse of discretion that results in substantial prejudice to a party.

Id. (citation omitted). Likewise, the Circuit Court's ruling on a motion for a continuance is reviewed for an abuse of discretion. See Kaleikini v. Yoshioka, 128 Hawai'i 53, 67, 283 P.3d 60, 74 (2012) (In denying a request for a continuance, "[a]n abuse of discretion occurs if the trial court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant") (citation and internal quotation marks omitted).

IV.   DISCUSSION

    A.   The Allocation of the Net Proceeds

        1.   The general power to make equitable adjustments

The Henry Trust disputes the equitable adjustments made by the Circuit Court to the Net Proceeds that resulted in the Henry Trust receiving none of the proceeds.  The Henry Trust contests the Circuit Court's power to make the equitable adjustments in the first instance, arguing that the Circuit Court erred by failing to distribute the Net Proceeds to the Henry Trust in proportion to its forty-five percent (45%) interest in the Property.

A court sitting in equity "administers its relief *ex aequo et bono,*[9] and by its decree adjusts the equitable rights of all the parties." Hawaiian Commercial & Sugar Co. v. Waikapu Sugar Co., 9 Haw. 417, 423, 1894 WL 3187, at *5 (Haw. Rep. 1894); see also Sugarman v. Kapu, 104 Hawai'i 119, 124, 85 P.3d 644, 649 (2004).  This necessarily broad mandate has been given in some form by statute.  Among the various equitable powers vested in the Circuit Court when sitting in equity in the partition of real estate, Hawaii Revised Statutes (HRS) § 668-7(a) (2016) provides, *inter alia,* that the Circuit Court has the power

> (4)  To cause the property to be equitably divided between the parties according to their respective proportionate interests therein, as the parties agree, or by the drawing of lots;
>
> (5)  To set apart any particular portion or portions of land to any particular party or parties who by prior occupation or improvement or otherwise may be equitably entitled thereto, and make any proper adjustment or equalization thereof by the sale of

---

     9    Latin for "according to what is equitable and good." *Ex aequo et bono,* BLACK'S LAW DICTIONARY 679 (10th ed. 2014).

> other portions and the application of the proceeds for such purpose, or as a condition of any such particular allotment to require payment by the parties of any value of the portion set apart to them in excess of their proportionate interest in the value of the whole property.

The power of the court is not restricted to the powers explicitly set forth in HRS chapter 668; rather, the statutory provisions supplement the court's general powers. See Sugarman, 104 Hawai'i at 124, 85 P.3d at 649.[10]

> It is evident from HRS § 668-1 that the legislature intended that the provisions of HRS chapter 668 supplement the court's equitable power. The statute recognizes the power of the courts to act "according to the usual practice of courts in equity," and "according to this chapter in *enlargement* thereof." HRS § 668-1 (emphasis added). Traditionally, courts of equity exist for the purpose of "do[ing] equity" by ensuring that "no injustice is done to either party" involved. Wodehouse v. Hawaiian Trust Co., 32 Haw. 835, 842 (1933). Inherent in the power to "do equity" is, of necessity, discretion to accomplish a just result under the circumstances. As indicated by HRS § 668-1, the legislature did not mean to restrict the powers granted to the circuit courts to only those enumerated in the specific provisions of HRS chapter 668. In enacting HRS § 668-1, the legislature thus contemplated that the courts would exercise equitable discretion in partition proceedings.

Id.

Thus, we reject the Henry Trust's argument that the Circuit Court did not have the power to make equitable adjustments to the division of the Net Proceeds between the interested parties. Moreover, the point was conceded at the hearing on the Distribution Motion when the Circuit Court inquired:

> [THE COURT]: So in terms of how should the Court distribute this dollar amount, the 476,000 and change. . . Now in terms of the Court's equitable power, the Court . . . .

---

[10] We note that the Hawai'i Supreme Court granted a motion for reconsideration in the Sugarman case. See Sugarman v. Kapu, 105 Hawai'i 483, 99 P.3d 1067 (Table) (2004). However, upon review of the order filed by the supreme court on September 17, 2004, in No. 24090, it appears that the motion was related to a request for fees and costs, and Sugarman remains persuasive and good law.

has the authority and discretion to consider any offsets
and credits, agreed, counsel, looking at the case law?

[LILY TRUST COUNSEL]: Yes.

[HARRISON AND HENRY TRUST COUNSEL]: Yes, Your Honor.

Generally, an argument not raised below is deemed to have been waived on appeal. See State v. Moses, 102 Hawai'i 449, 456, 77 P.3d 940, 947 (2003). Regardless, the Circuit Court clearly had the equitable powers to make adjustments to the amounts distributed to the parties out of the Net Proceeds according to the equities of the case.

2.    The Foreclosure Expenses

The Henry Trust argues that the Circuit Court erred by attributing the Foreclosure Expenses to Harrison and the Henry Trust. The Foreclosure Expenses, totaling $120,187.12, consist of interest, late charges, and other fees incurred in the foreclosure action after the Lily Trust filed its complaint seeking the partition of the Property.

The Lily Trust argues that none of the Foreclosure Expenses should be charged against it because the 2006 Loan, secured by a mortgage on the Property, inured solely to the benefit of Harrison, Kellie, and Henry. It was conceded by Harrison and the Henry Trust that the Lily Trust was not a party to the 2006 Loan and they do not argue that the Lily Trust obtained any benefit from the loan, even though the Lily Trust's fifty percent (50%) interest in the Property was burdened by the loan and the mortgage securing the loan. The Lily Trust argued that Carolyn had secured a ready, willing, and able buyer to purchase the Property at or near the appraised value of the

11

Property, and Harrison and the Henry Trust (a) refused to sell the Property voluntarily and (b) opposed partition and took numerous steps to delay the Partition Action. Therefore, the Lily Trust argued that equity demands that the Foreclosure Expenses, as incurred from time of the Lily Trust's filing of the Partition Action, should be charged against Harrison and the Henry Trust and deducted from their shares of the Net Proceeds.

The Henry Trust argues that the Foreclosure Expenses should not be charged to it and separates those expenses into two categories: (1) late charges in the amount of $107,303.62 (**Late Charges**) and (2) an escrow advance in the amount of $12,883.50 (**Escrow Advance**). With respect to the Late Charges, Harrison and the Henry Trust argue that the Late Charges should not be charged solely to the trust as Harrison and the Henry Trust acted within their rights and were justified in opposing the sale of the Property. Harrison and the Henry Trust characterize the Circuit Court's decision to charge the late charges to the Henry Trust as a penalty for opposing the sale of the Property and for protecting Henry's right to possess the Property while he was alive and competent. The Henry Trust argues that it and Harrison were justified in opposing the partition because it was Carolyn's fault that the 2006 Loan went into foreclosure and they were justified in waiting until the end of the Probate Action to proceed with the sale.

We conclude that the Circuit Court did not abuse its discretion in allocating the Late Charges to the Henry Trust. The Circuit Court, exercising its equitable powers, is primarily

concerned with providing a just result for all the parties. See Sugarman, 104 Hawaiʻi at 124, 85 P.3d at 649. Assuming that Harrison and the Henry Trust had the *right* to pursue the legal course they did in opposing the Partition Action, it does not follow that the Circuit Court could not, within its discretion, find that this course of action was unreasonable and caused unnecessary delay and unnecessary foreclosure expenses to the detriment of the Lily Trust. This appears to be, in fact, the calculation made by the Circuit Court. The Lily Trust was able to secure a buyer of the Property following the initiation of the foreclosure action by the mortgagee, but Harrison and the Henry Trust's actions, including a failed attempt in probate court to remove Carolyn from her role as trustee of the Lily Trust, delayed the sale of the Property for approximately a year. We cannot conclude that the Circuit Court's decision "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice" to the Henry Trust's substantial detriment in so deciding. In re Ishida-Waiakamilo Legacy Trust, 138 Hawaiʻi 98, 102, 377 P.3d 39, 43 (App. 2016) (quoting Ueoka v. Szymanski, 107 Hawaiʻi 386, 393, 114 P.3d 892, 899 (2005)).

Regarding the Escrow Advance of $12,883.50, the Henry Trust argues that it should not have been fully charged to the Henry Trust because the total escrow advance amount of $25,767.00 reflects a cost to be shared by both trusts. It appears that the escrow advances were sums advanced by the mortgagee for real property taxes and insurance on the Property, which were the responsibility of the owners of the Property but were actually

13

paid by the lender. Notably, the Lily Trust has only sought a credit for one-half of the escrow advances advanced by the lender. The full amount of the escrow advances, $25,767.00, was paid out of the proceeds from the sale of the Property, and the Lily Trust requested that one-half of that amount, allocated between The Henry Trust and Harrison, be charged against their portion of the Net Proceeds. We reject the argument that this constituted an abuse of discretion.

### 3. Tax Liens charged to the Henry Trust

The Henry Trust next argues that the Circuit Court erred by charging the trust with the federal and state tax liens against Henry in the amount of $90,651.44 (**Tax Liens**).[11] It is undisputed that the Tax Liens stemmed from taxes that were determined by the taxing authorities to be owed by Henry, individually, and that no appeals were taken contesting that determination. It was also undisputed that the Tax Liens were paid off from the proceeds from the sale of the Property.

The Lily Trust argues that it was just and equitable that the Tax Liens be charged against the Henry Trust as that trust, as a self-settled trust, is subject to the claims of Henry's creditors and the Tax Liens stemmed from taxes that were previously found to be owed by Henry, as an individual. The Henry Trust argues that the Tax Liens accrued during Carolyn's tenure as trustee of the Henry Trust and resulted from the failure to pay the appropriate taxes following the sale of a

---

[11] The Lily Trust sought a credit for one-half of the tax liens paid out of the proceeds of the sale of the Property in the amount of $45,325.72.

second property, the Malukai house (**Malukai Property**), which was an asset of both the Henry Trust and the Lily Trust.

HRS § 668-11 provides that the court has the power in a partition action to satisfy an encumbrancer's claim out of the encumbered party's portion of the proceeds from the sale of that property.[12] The dispute is not whether the Circuit Court had the power to satisfy the Tax Liens from the proceeds of the sale of the Property, but whether it was equitable to satisfy the liens from the Henry Trust's share of the proceeds. We conclude that the Circuit Court's decision to charge the Tax Liens to the Henry Trust was not an abuse of discretion. Hawai'i follows the rule found in the majority of jurisdictions that a spendthrift trust established by the settlor for his own benefit is invalid against the settlor's creditors. See Cooke Trust Co. v. Lord, 41 Haw.

---

[12]    HRS § 668-11 (2016) provides:

> Where partition is made of any property which is subject as a whole to any lien or incumbrance, the court may with the consent of the incumbrancer apportion the incumbrance against the separate portions as partitioned to the parties, or if the property is sold and the incumbrancer's claim is due and may be discharged by payment the court may discharge the same out of the proceeds. Otherwise, unless the incumbrancer consents to receive payment, the court may without disturbing or then making any adjudication as to the incumbrance, sell, subject to the incumbrance, the property affected thereby; *or if any lien or incumbrance is only upon the undivided share or interest of any particular party the court may by its decree make the same a lien and charge only upon the parcel of land partitioned to the party or a charge against the party's share of the proceeds of sale thereof.* In every case the property sold shall first be charged with its just proportion of the costs of the partition in preference to the lien or charge. Any party holding a lien or incumbrance and also having other securities, may in the court's discretion be required to exhaust such others before a distribution of the proceeds of sale in partition, or the court may order a just deduction to be made from the amount of the lien on the property on account of such other security.

(Emphasis added).

198, 202 (Haw. Terr. 1955); see also Holualoa Aloha, LLC v. Anekona Aloha, LLC, No. 30068, 2013 WL 709670, *1 (App. Feb. 27, 2013) (SDO). Accordingly, the assets of the Henry Trust are subject to the claims of Henry's creditors. It is reasonable for the Circuit Court to have determined that since the Henry Trust is subject to the claims against Henry, it was prudent and equitable to satisfy the Tax Liens with the portion of the Net Proceeds from the sale of the Property apportioned to the Henry Trust.

We conclude that the decision by the Circuit Court to allocate responsibility for the Tax Liens to the Henry Trust was not an abuse of discretion.

### 4. The Lily Trust's attorneys' fees and costs

The Henry Trust argues that the Circuit Court erred in awarding the Lily Trust its attorneys' fees and costs in the amount of $63,242.52 (**Attorneys' Fees**) from the Henry Trust's share of the Net Proceeds. The Lily Trust's position, adopted by the Circuit Court, is that the Henry Trust should be responsible for these fees as they represent the costs incurred by the Lily Trust in initiating and prosecuting the Partition Action, which was unnecessary, as a ready, willing, and able buyer for the Property had been secured, but Harrison and the Henry Trust refused to cooperate.

First, the Henry Trust argues that it should not be responsible for any fees incurred before it filed its answer in the Partition Action opposing the sale of the Property. The Lily Trust provided evidence to the Circuit Court that, following the

initiation of an action to foreclose on the Property, Harrison and the Henry Trust refused to cooperate to voluntarily sell the Property to a buyer who was willing to pay the appraised value of the Property. It was not an abuse of discretion for the Circuit Court to agree that the Henry Trust should reimburse the Lily Trust for the fees it incurred in both initiating and prosecuting the Partition Action, as HRS § 668-17, discussed below, allows apportionment of all fees and costs of the proceedings in partition.

Second, the Henry Trust argues that fees incurred by the Lily Trust in the Probate Action were erroneously included in the award of Attorneys' Fees. The Henry Trust submits that this award was in error because the Probate Action was separate from the present cause of action and the Henry Trust was not a party to the Probate Action. The Lily Trust responds that this claim is factually incorrect and the Attorneys' Fees only include amounts incurred for the Partition Action. The Lily Trust's request for attorneys' fees was supported by the declaration of counsel that the fees requested were for legal services in the Partition Action. The declaration of counsel was supported by billing statements detailing the work performed by counsel. The Henry Trust, having reviewed approximately sixty-six pages of billing statements, has identified three entries it claims supports its contention that the Lily Trust's charges include work performed by counsel in the Probate Action. The challenged entries are as follows:

(1)   On March 31, 2015, counsel billed for the "[r]eview of memorandum in opposition to motion for partition sale and probate petition."

(2) On April 3, 2015, counsel billed for the "[r]eview of Plaintiff's response to allegations in Harrison Lai's Probate Petition and Document to Produce per Defendant Harrison Lai's discovery request."

(3) On May 6, 2015, counsel billed for "[t]elephone conference with Carolyn Yoshimoto re status of matter; strategy concerning Partition action and Probate matter."

Regarding entry (1), it is undisputed that the Partition Action and the Probate Action were interconnected and each action was factually relevant to the other.  It was not unreasonable for the Circuit Court to award a minimal amount of attorneys' fees for work incurred in the Partition Action that included the review of work done in the Probate Action. Regarding entry (2), it appears that the review of the Probate Petition was in response to Harrison's discovery request made in the Partition Action, as the Plaintiff's response in the Probate Action was reviewed in order *to be produced* per Harrison's discovery request.  The Circuit Court could have reasonably inferred that the discovery request was, therefore, connected to the Partition Action.  Finally, regarding entry (3), the stated purpose of the telephone call was to develop a strategy for both the Partition Action and the Probate Action.  As explained regarding entry (1), the matters were interconnected.  Out of

sixty-six pages, the Henry Trust has identified three entries that mention the Probate Action, but each entry can reasonably be construed as fees incurred in the Partition Action. We find no abuse of discretion.

Finally, the Henry Trust argues that, pursuant to HRS § 668-17 (2016), the Circuit Court should have apportioned the Attorneys' Fees and Costs based on the parties' respective interests in the Property. HRS § 668-17 states:

> § 668-17 Costs. All costs of the proceedings in partition shall be paid by the plaintiff in the first instance, but eventually by all of the parties in proportion to their interests, except such costs which may be occasioned by contests as to particular shares or interests, which shall be charged against the particular shares or interests involved and be paid as determined by the result of the trial of the particular issue. In addition to costs of the proceeding the judge may allow any fee or fees for legal services rendered by the attorneys for any of the parties, and apportion the same for costs for payment by and between the parties or any of them, all as to the judge shall seem equitable in the light of the services performed and the benefits derived therefrom by the parties, respectively. When more than ten defendants are named in a complaint for partition, no greater payment for costs shall be required of the plaintiff than would be required if there were but ten defendants.

In the first instance, the statute presumes that the costs of the partition proceeding are to be paid "by all of the parties in proportion to their interests," except in circumstances not relevant here. However, "[i]n addition to costs of the proceeding," the judge may also apportion "any fee or fees for legal services" between the parties, "all as to the judge shall seem equitable in the light of the services performed and the benefits derived therefrom by the parties, respectively." (Emphasis added). Thus, although the presumption is that the costs in prosecuting a partition action are to be paid by the

parties in proportion to their interests, the court retains discretion to allocate the burden of costs as it deems to be equitable. See also Kimura v. Kamalo, 106 at 511, 107 at 440 (the court has the power "under HRS § 668-17 and in equity to allocate costs" as between defendants).

Here, we cannot conclude that the Circuit Court's decision to allocate the entire burden of the fees and costs of the Partition Action to the Henry Trust and Harrison "clearly exceeds the bounds of reason or disregards rules or principles of law or practice" to the Henry Trust's substantial detriment. Id. at 507, 107 P.3d at 436 (citation and internal quotation marks omitted). As argued by the Lily Trust below, it did not benefit from the loan; in addition, as a result of the foreclosure and the subsequent proceedings, the value of the Lily Trust's fifty percent (50%) interest in the Property will not be fully paid to it, even after the equitable adjustments awarded by the Circuit Court. The Henry Trust makes no other argument as to why it was inequitable to allocate full responsibility to Harrison and the Henry Trust. Rather, the Henry Trust summarily states that, pursuant to HRS § 668-17, the Circuit Court should have apportioned attorneys' fees and costs based on interests. We conclude that, based on the circumstances before it, the Circuit Court did not abuse its discretion in the allocation of the Lily Trust's Attorneys' Fees.

B.    The Distribution to Kellie

The Henry Trust argues that the Circuit Court abused its discretion in distributing any amount of the Net Proceeds to

Kellie. The Henry Trust argues that neither Harrison nor Kellie as individuals should receive any share of the Net Proceeds because they were joint borrowers on the 2006 Loan that went into default and they both benefitted from that loan. Because the proceeds will not be able to compensate the Lily Trust and the Henry Trust, non-borrowers which did not benefit from the 2006 Loan, the Henry Trust argues that Kellie and Harrison are entitled to none of the proceeds for their five percent (5%) interest in the Property.

The Henry Trust fails to address the primary argument Kellie made to the Circuit Court as to why she deserved to receive a share of the Net Proceeds. Counsel for Kellie argued that the primary equitable consideration in support of Kellie's request for $11,892.52[13] was to allow a partial reimbursement for attorneys' fees she necessarily incurred as a result of Harrison and the Henry Trust's opposition to the voluntary sale of the Property and the unnecessarily prolonged Partition Action. The Lily Trust agreed that Kellie had been cooperative with the voluntary sale of the Property, opposed by Harrison and the Henry Trust, and that it was just that she receive a portion of her attorneys' fees out of the Net Proceeds.

Even if we were to accept the Henry Trust's position that Kellie as a borrower on the defaulted loan was not entitled

[13] Harrison and Kellie had an undivided five percent (5%) interest in the Property. The sum of $11,892.52 was reached by taking one-half of that interest, two and five tenths percent (2.5%) of the Net Proceeds of the Property (less $420 paid to the Commissioner). [($476,120.82 - $420 = $475,700.82) x 2.5% = $11,892.52] Kellie's counsel submitted a declaration to the Circuit Court, supported by billing statements, that Kellie had incurred more than $18,000 in attorneys' fees in the Partition Action.

to receive a proportionate share of the sale proceeds because they were insufficient to compensate the Lily Trust and the Henry Trust for their ownership interests, it is a separate question whether the court, in equity, abused its discretion in awarding Kellie part of her attorneys' fees. The Henry Trust provides no argument as to why it was an abuse of discretion for the Circuit Court to award Kellie a sum to compensate her for attorneys' fees incurred as a result of the Partition Action. HRS § 668-17 specifically permits the court to "allow any fee or fees for legal services rendered by the attorneys for <u>any</u> of the parties." (Emphasis added). Under the circumstances of this case, which are discussed above, we conclude that the Circuit Court did not abuse its discretion in ordering a distribution to Kellie for part of the attorneys' fees she incurred in the Partition Action.

C.    <u>Discovery and Evidence Regarding the Tax Liens</u>

Finally, the Henry Trust argues that the Circuit Court erred in denying it the opportunity to present evidence regarding which trust was responsible for the liens that encumbered the Property, when they should have been paid, and who benefitted from the loans. The only liens on the Property were the Tax Liens assessed against Henry and paid out of the proceeds from the sale of the Property.

At the hearing on the Distribution Motion, the Henry Trust initially took the position that it needed more time to conduct discovery before it could adequately address, through the presentation of additional evidence, the issue of who should be responsible for the liens. At that hearing, however, the Circuit

Court thoroughly examined the issues before it to understand whether it could rule or whether more discovery was, in fact, needed. In considering the Henry Trust's request, the Circuit Court observed that the additional discovery sought by the Henry Trust related to the issues raised in the Probate Action. Therefore, discovery regarding those issues would have been already been obtained in the Probate Action, for which Harrison was the plaintiff. Although issues of res judicata and collateral estoppel were discussed, the Circuit Court did not, in fact, find that either of those theories precluded discovery into those issues; rather, the Circuit Court observed that, since Harrison was the trustee of the Henry Trust, he would already have had access to the records of the Henry Trust that were identified as subject to further discovery. It appears, therefore, that the Circuit Court did not believe additional discovery was needed. In addition, since there was no dispute that the Tax Liens stemmed from taxes assessed against Henry as an individual, which assessment was unchallenged, the Circuit Court determined that any disputes as to the liability underlying those liens should have been raised in another forum.

The Circuit Court walked through each of these issues with the Henry Trust's counsel, and it appears that the Henry Trust conceded that the Circuit Court could rule absent additional discovery. The discussion regarding pending discovery issues concluded as follows:

> THE COURT: All right. So is there any reason why the Court cannot rule because I am affording you every opportunity in terms of the dollar amount, what's not at issue, the tax liens, the adjustments to

23

the foreclosure ... [Y]ou've already acknowledged that your client is not asking for any credit or offset that's of monetary value, true?

[HENRY TRUST COUNSEL]: True.

THE COURT: But on the other hand, plaintiff Carolyn Yoshimoto as successor trustee for [the Lily Trust] is claiming adjustments, credit, offset, and they detailed it when they filed their [Distribution Motion] and that's set forth in Exhibit I. So that's what the Court is dealing with regarding any adjustments.

And we've gone through quite a bit of time trying to elicit from you, counsel, in terms of your request for discovery, how does it pertain to those issues, true?

[HENRY TRUST COUNSEL]: True.

THE COURT: So there's nothing else that you need for discovery.

[HENRY TRUST COUNSEL]: That's correct. So if the Court is --

THE COURT: Because if there's anything else as [Lily Trust Counsel] mentioned that it might be not for this particular forum, but maybe some other forum between the two sides.

[HENRY TRUST COUNSEL]: That's right.

We conclude that, based on the evidence and arguments presented, the Circuit Court did not abuse its discretion in determining that additional discovery was unnecessary and, therefore, no further continuance was warranted. The Partition Action had been filed and continued on for over a year, and discovery regarding the issues the Henry Trust sought to explore had been raised in the Probate Action. Harrison had access to that discovery and, as trustee for the Henry Trust, the Henry Trust did as well. Finally, having thoroughly inquired of the Henry Trust's counsel, it appears all parties agreed that the Circuit Court could rule on the Distribution Motion and any other issues would be more properly disposed of in another forum.

Therefore, we conclude that the Circuit Court did not abuse its discretion in ruling on the Distribution Motion without further discovery.

V.    CONCLUSION

For these reasons, the Circuit Court's July 29, 2016 Distribution Order is affirmed.

DATED: Honolulu, Hawai'i, May 25, 2018.

On the briefs:

Margery S. Bronster,
Catherine L. Aubuchon,
Tyler A. Tsukazaki,
(Bronster Fujichaku Robbins),
for Defendant-Appellant.

Yuriko J. Sugimura,
(Bendet Fidell Sugimura),
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge